[Doc. Nos. 88, 89, 90, 105]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CHRISTOPHER TROWERY,

        Plaintiff,

  v.

JOAN F. O'SHEA, M.D., et al.,

        Defendants.

Civil No. 12-6473 (NLH/AMD)

## MEMORANDUM OPINION AND ORDER

      This matter comes before the Court by way of Plaintiff Christopher Trowery's (hereinafter, "Plaintiff") motion to compel [Doc. No. 88] and motion for sanctions [Doc. No. 89]. Also pending before the Court is Defendant Joan F. O'Shea's (hereinafter, "Defendant O'Shea") motion for sanctions [Doc. No. 90], as well as a motion by Defendant Zimmer, Inc. for the withdrawal of the *pro hac vice* admission of Patrick J. Reilly [Doc. No. 105]. For the reasons set forth herein, the motion to compel [Doc. No. 88] is granted in part and denied in part; the motions for sanctions [Doc. Nos. 89, 90] are granted in part and denied without prejudice in part; and the motion for withdrawal of the *pro hac vice* admission of Patrick J. Reilly [Doc. No. 105] is denied without prejudice.

Plaintiff initiated the present products liability action on October 12, 2012 against Defendants McKesson Corporation, Zimmer, Inc. and Joan F. O'Shea. (See Complaint [Doc. No. 1].) Plaintiff generally alleges that he suffers from "severe and continuing pain in [and] about his neck and upper extremities and continued pain, discomfort and disability" as the result of a "defective" plate, known as the Trinica Select Anterior Plate,[1] that was manufactured by Defendant Zimmer and inserted into Plaintiff's spine during a cervical fusion surgery performed by Defendant O'Shea.[2] (See Complaint [Doc. No. 1], ¶ 26.)

Plaintiff further alleges that Defendant O'Shea "failed or refused to act with reasonable care" in performing the surgery and in her subsequent post-operative treatment of Plaintiff. (See

_____

[1] Although Plaintiff's complaint and subsequent submissions refer to the purportedly defective products as a "spine trabec implex, screws, and plate manufactured by [D]efendant[] Zimmer and sold by [D]efendant McKesson," (see, e.g., Complaint [Doc. No. 1], ¶ 33), Plaintiff subsequently identifies the defective product as the "locking mechanism of the plate[.]" (See Memorandum of Law in Support of Motion for Partial Summary Judgment [Doc. No. 53], 3.) The plate is referred to by Defendant Zimmer as the "Trinica Select Anterior Plate." (See Letter [Doc. No. 78].)

[2] Plaintiff also asserted claims against Defendant McKesson Corporation based on its role in selling Defendant Zimmer's purportedly defective product. (See generally Complaint [Doc. No. 1].) However, on May 14, 2013, the parties submitted a proposed stipulation of dismissal of all claims against Defendant McKesson Corporation (see Stipulation of Dismissal [Doc. No. 39]), and the District Court dismissed without prejudice all claims against Defendant McKesson Corporation. (See Stipulation and Order of Dismissal [Doc. No. 40], May 14, 2013, 1.)

id. at ¶¶ 61-62.) Defendants assert a number of legal defenses against Plaintiff's claims (see, e.g., Answer [Doc. No. 7]; see also Answer [Doc. No. 12]; Answer [Doc. No. 15], and Defendant O'Shea asserts a cross-claim for indemnification against Defendants McKesson Corporation and Zimmer (See Answer [Doc. No. 7].)

On January 31, 2013, Plaintiff sent "Requests for Production of Documents to Defendant, Zimmer." (See Pl.'s Mot. for Sanctions [Doc. No. 89], ¶ 2.) In particular, Plaintiff requested Defendant Zimmer provide:

> any and all investigations, interviews, notes of interviews or information ascertained, whether taken by attorney, paralegal, claims adjuster, physicians, nurses, risk management people, insurance agents, or the like in connection with the implant system . . . .

(See Ex. A [Doc. No. 89-1], ¶ 1.) Defendant Zimmer objected to this request for various reasons, but ultimately asserted that it would supplement its response "once Plaintiff has provided the necessary and complete product identification information, including the lot numbers of the components specifically at issue in this case." (Ex. B [Doc. No. 89-2], ¶¶ 4-5.) An issue during discovery has been the identity of the lot number for the plate implanted in Plaintiff during the surgery. (See Affidavit of Patrick H. Reilly, Apr. 23, 2015 (hereinafter, "Reilly Aff.") at

¶¶ 27–28.)[3] Defendant Zimmer contends that "the parties have long-been frustrated by their inability to fully investigate the plate implanted in Plaintiff because the parties have not been able to locate the plate's lot number." (See Defendant Zimmer's Response to Motions for Sanctions (hereinafter, "Def. Zimmer's Sanctions Opp'n") [Doc. No. 93], 2.) Notwithstanding Defendant Zimmer's objections and failure to locate the missing lot numbers, Defendant Zimmer produced responsive documents on August 5, 2014 to Plaintiff. (See Reilly Aff. at ¶ 17.)

The issue currently before the Court is related to Defendant Zimmer's supplemental production of documents on the final day of the fact discovery period — January 15, 2015 — and additional production on March 4, 2015. Specifically, Plaintiff alleges that on January 15, 2015, Defendant Zimmer produced to Plaintiff the Device History Records and design drawings for the defective plate and "copies of a complete investigation" report - Complaint Detailed Summary Report (hereinafter, "CDSR") performed by Defendant Zimmer concerning the allegedly defective plate. (See Letter [Doc. No. 74], 2.) Plaintiff further alleges that Defendant Zimmer subsequently produced an updated CDSR, together with other documents on March 4, 2015. (Pl.'s Mot. [Doc. No. 89], ¶ 7; Pl.'s

---

[3] The Reilly affidavit has been submitted to the Court, but not filed on the docket. Defendant is directed to file the affidavit on the docket.

Memorandum of Law in Support of Pl.'s Mot. for Sanctions
(hereinafter, Pl.'s Sanction Brief [Doc. No. 89], 2-3.) Plaintiff
generally describes the CDSR as having been "generated" on May 22,
2013 by an employee of Defendant Zimmer's litigation department,
Brandee Martinsky, and that the CDSR includes details regarding
Defendant Zimmer's awareness of Plaintiff's allegations, Defendant
Zimmer's subsequent investigation of those allegations, Defendant
Zimmer's notification to the FDA of Plaintiff's allegations
regarding its product, and interviews with certain witnesses.
(Id.) Plaintiff further contends that the CDSR was responsive to
Plaintiff's January 31, 2013 requests for the production of
documents; however, the documents were not produced in Defendant
Zimmer's August 5, 2014 document production. (See id. at 4.)
Moreover, Plaintiff alleges that the CDSR includes the "[l]ot
[n]umbers" for the products at issue in the litigation,
notwithstanding Defendant Zimmer's prior representations that it
was unaware of the products' lot numbers and therefore "could not
produce information and respond to discovery requests[.]" (Pl.'s
Sanction Brief [Doc. No. 89], 3.) Plaintiff further contends that
the late production is both "inexcusable" and prejudicial. (See,
id. at 6.)

Similarly, Defendant O'Shea describes the CDSR and
"[u]pdated Complaint File" as "contain[ing] significant factual
information concerning the facts and circumstances underlying the

allegations of negligence against Dr. O'Shea[.]" (Certification of Thomas Walsh (hereinafter, "Walsh Certification") [Doc. No. 90-1], ¶ 5.) Specifically, Defendant O'Shea alleges that the CDSR includes "what appear to be alleged party admissions by Dr. O'Shea that her own surgical technique caused the alleged product failure in question[]" that were "gathered . . . during interviews conducted by Zimmer." (Id. at ¶¶ 6-7.) Defendant O'Shea further alleges that these interviews include interviews from "material witnesses" in this litigation such as Devin Finnell and Dr. Welch.[4] (Id. at ¶¶ 7-9; see also Complaint [Doc. No. 1].) Furthermore, Defendant O'Shea contends that the CDSR should have been produced earlier, and further contends that "Defendant Zimmer's counsel has admitted" that the CDSR "should have been provided in pretrial disclosures." (Id. at ¶ 10.)

Defendant Zimmer describes its belated production of the CDSR as inadvertent and an oversight. (See generally Def. Zimmer's Response to Motion to Compel (hereinafter, "Def. Zimmer's Compel Opp'n [Doc. No. 94].) Defendant Zimmer admits that the documents are relevant to this case and should have been provided sooner.

---

[4] Dr. Welch is identified in the complaint as a surgeon who performed a "corrective procedure" on Plaintiff following Defendant O'Shea's "unwilling[ness] to perform additional surgery" on Plaintiff's spine. (Complaint [Doc. No. 1], ¶¶ 22-23.) Dr. Welch purportedly represented that the "pre and post operative diagnosis" of Plaintiff's condition "was failed instrumentation." (Id. at ¶ 23.)

(Transcript [Doc. No. 107], 28:16-20). However, Defendant Zimmer argues its delay in producing documents was "innocent" (see id. at 28:23), as there was no reason for it to withhold the CDSR since it contains "exculpatory evidence that Zimmer would be eager to produce." (Def. Zimmer's Sanctions Opp'n [Doc. No. 93], 3.) Accordingly, Defendant Zimmer contends that its conduct was not "dilatory, willful, or in bad faith." (Id.)

Plaintiff and Defendant O'Shea filed motions for sanctions based upon Defendant Zimmer's late production of the CDSR, and Plaintiff has also filed a motion to compel additional discovery. (See Motion to Compel [Doc. No. 88].) The Court conducted oral argument on April 16, 2015. (See generally Transcript [Doc. No. 107], Apr. 16, 2015.) Defendant Zimmer's pro hac vice counsel, Patrick Reilly, Esquire, who did not appear at the oral argument,[5] is the individual Defendant Zimmer asserts is responsible for its delayed production. (See generally Def. Zimmer's Compel Opp'n [Doc. No. 94].) Following oral argument, the parties filed supplemental submissions regarding the pending motions. (See Pl.'s Suppl. Mem. in Support [Doc. No. 110]; see also Memorandum in Support (hereinafter, Def. O'Shea's Suppl. Mem.") [Doc. No. 111]; Response in Opposition (hereinafter, Def.

---

[5] Mr. Reilly represented to the Court that his absence was due to an appearance at a previously scheduled, court-ordered settlement conference in another matter concerning Defendant Zimmer in the Eastern District of Louisiana. (See Reilly Aff. at ¶ 4.)

Zimmer's Suppl. Mem.") [Doc. No. 113].) In addition, Defendant Zimmer produced two affidavits, one from Mr. Reilly, and another from Scott LaPointe,[6] Defendant Zimmer's Manager of Quality Compliance. Mr. Reilly is an attorney at Faegre Baker Daniels LLP and was admitted to appear *pro hac vice* on behalf of Defendant Zimmer in this matter.[7] (See Order [Doc. No. 34] Apr. 23, 2013.) In Mr. Reilly's *pro hac vice* motion, he represented to the Court that he maintains:

> a long-standing attorney-client relationship with Zimmer, and Zimmer has requested that I be permitted to represent it in this matter . . . as this matter involves complex legal and medical issues with which I am intimately familiar. I have extensive experience in product liability litigation, and have litigated numerous cases in both State and Federal Courts, which expertise would be valuable to the litigation currently proceeding before this Court.[8]

(Amended Affidavit of Patrick Reilly, Esq. [Doc. No. 32], ¶ 3.)

Mr. Reilly asserts that he was primarily responsible for discovery in this matter and is at fault for the delay in producing documents. (See Reilly Aff. at ¶ 2; see also Def. Zimmer's Suppl.

---

[6] The LaPointe affidavit has been submitted to the Court, but not filed on the docket. Defendant Zimmer is directed to file the affidavit on the docket.

[7] On May 18, 2015, Defendant Zimmer moved to withdraw Mr. Reilly's *pro hac vice* admission to the United States District Court for the District of New Jersey, Camden Vicinage. (See Motion to Withdraw [Doc. No. 105].) For the reasons set forth herein, the Court denies this motion without prejudice.

[8] At oral argument, Defendant Zimmer represented that the firm Faegre Baker Daniels LLP is "national counsel" for Defendant Zimmer. (Transcript [Doc. No. 107], 25:15-19.)

Mem. [Doc. No. 113], 9.) Mr. Reilly contends that he "inadvertently" overlooked the CDSR until January 2015. (Reilly Aff. at ¶¶ 12, 15, 17, 18.) Mr. Reilly admits that he received the CDSR from Defendant Zimmer on May 23, 2013 and after "briefly" reviewing it, he then "forgot that [he] had received the [CDSR]." (Id. at ¶¶ 10 and 12.) On January 11, 2015 — just prior to the close of discovery — Mr. Reilly "came across the [CDSR]" and realized "that it was responsive to Mr. Trowery's discovery requests." (Id. at ¶¶ 18-19.) Moreover, Mr. Reilly "noticed for the first time . . . toward the end of the [CDSR], . . . the lot number for the plate [at issue in this case]." Accordingly, on January 12, 2015, Defendant Zimmer asserts the following events occurred: Mr. Reilly contacted Gary Tanner, an employee for Defendant Zimmer, asking him to confirm that the lot numbers in the CDSR matched the plate that was implanted in Plaintiff. (See id. at Ex. D, 2.) Mr. Tanner replied to Mr. Reilly's email indicating that it might be the lot number and then emailed Mr. LaPointe asking him if lot number 61196342 "is a good lot number for the . . . Trinica Select Plate at issue in the Trowery case." (Id.) Mr. LaPointe confirmed that the lot number was good and indicated that he would be able to obtain the requested data. (Id.) On January 15, 2015, Defendant Zimmer produced (1) the CDSR "related to Zimmer's regulatory investigation into Plaintiff's alleged claims; (2) a single design drawing related to the specific

plate at issue; and, (3) the Device History Record [] (i.e. manufacturing record) for the lot that included the subject plate." (Letter [Doc. No. 78], 1; see also Reilly Aff. at ¶ 22.) Moreover, Mr. Reilly asserts that he received an updated CDSR from Defendant Zimmer on February 26, 2015 — after the close of the discovery period — which he produced to the parties on March 4, 2015. (Reilly Aff. at ¶¶ 25—26.)

        Mr. Reilly further asserts that prior to January 11, 2015, he "made multiple representations to the Court and opposing counsel that Zimmer could not retrieve certain documents (the Device History Record and the design drawing) because it did not know the lot number for the plate." (Reilly Aff. at ¶ 27.) However, emails attached to Mr. Reilly's affidavit indicate that on March 12, 2014, Bonnie Fishman, a paralegal at Faegre Baker Daniels LLP, sent an email to Mr. Tanner of Zimmer (copying Zimmer's litigation coordinator, Ms. Martinsky, Mr. Reilly and Stacy Lynn Prall[9]) asking Mr. Tanner about various lot numbers in the CDSR. (Reilly Aff. at ¶ 14; see also Reilly Aff., Ex. C, at 2.) In particular, Ms. Fishman's email stated:

---

[9] Ms. Prall is also an attorney at Faegre Baker Daniels LLP and the Court has granted her admission to appear *pro hac vice* on behalf of Defendant Zimmer (Order [Doc. No. 33] Apr. 28, 2013.) In Ms. Prall's motion to appear *pro hac vice*, she also admitted to maintaining "a long-standing attorney-client relationship with Zimmer." (Affidavit of Stacy L. Prall, Esq. [Doc. No. 28-1] ¶ 3, 5 on the docket.)

> "Patrick [Reilly] would like to know if there is
> a[] [Medwatch Report] for the Trowery device. The
> catalog and lot nos. for the plate and fusion
> devices and the catalog nos. for the screws (you
> may remember, we don't have the lot nos. for the
> screws) and other information pertinent to the
> implant surgery are as follows . . . . 3-level,
> 57mm Cervical Plate (07.00342.033, 61196342[10]).

(Reilly Aff. Ex. C, at 2.) Mr. Reilly has represented to the Court
that "I do not know that I read Ms. Fishman's email and certainly
have no recollection of realizing that Ms. Fishman had located the
missing lot number for the plate." (Reilly Aff. at ¶ 14.)
Regardless, the email chain indicates that Zimmer's litigation
coordinator, Ms. Martinsky, responded to Ms. Fishman's email later
that day (copying Mr. Reilly, Ms. Prall and Mr. Tanner) stating
that "[t]here has only been one additional [Medwatch Report] since
I sent you the [CDSR] on 5/22/13." (Id. at Ex. C, 1.) Mr. Reilly
then responded to Ms. Martinsky's email opining that the
conclusions in the documents indicated "that nothing was wrong
with the plate." (Id.) Mr. Reilly's affidavit does not explain his
email exchange with Ms. Martinsky and why this communication, that
references the CDSR, did not trigger his memory regarding the CDSR.

In addition, Defendant Zimmer has submitted an affidavit
from Scott LaPointe, Manager of Quality Compliance at Zimmer Spine,

---

[10] 61196342 is the lot number that Mr. Reilly discovered and asked
Mr. Tanner to confirm in his January 12, 2015 email. Mr. Tanner
then emailed Mr. LaPointe and asked him to check out lot number
61196342, which Mr. LaPointe confirmed as the lot number for the
plate implanted in Plaintiff. (See Reilly Aff. Ex. D, at 2-3.)

who described the contents of the CDSR and Defendant Zimmer's standard operating procedures for how the CDSR is updated. Mr. LaPointe asserted that Defendant Zimmer became aware of the Plaintiff's complaint about the product on October 29, 2012. (Affidavit of Scott LaPointe, May 13, 2015 (hereinafter "LaPointe Aff.") at ¶ 14.) On November 13, 2012, Defendant Zimmer opened a "Complaint File" for the Plaintiff and began "email[ing] several sales representatives with questions about [Plaintiff's] surgeries." (Id. at ¶¶ 18, 20.) Defendant Zimmer then submitted two Medwatch Reports on November 27, 2012 to the FDA, submitted two additional Medwatch Reports on December 26, 2012, and then closed the Plaintiff's "Complaint File." (Id. at ¶ 23.) After closing Plaintiff's file, Defendant Zimmer uncovered additional information related to the Plaintiff's issue and on June 17, 2013, added further documents to the file. (Id. at ¶ 23.) Finally, Defendant Zimmer reopened Plaintiff's file on January 21, 2015, submitted new documents to the file, and then closed the file on January 31, 2015. (Id. at ¶¶ 24-25.)

The Court turns first to the pending motions for sanctions [Doc. Nos. 89, 90] and the portion of Plaintiff's motion to compel seeking additional discovery. Both Plaintiff and Defendant O'Shea seek sanctions under Rule 37(c).[11]  "Rule 37 of

---

[11] On December 1, 2015, the Federal Rules of Civil Procedure were amended. Such amendments "shall take effect on December 1, 2015,

the Federal Rules of Civil Procedure governs sanctions against a party who fails to provide discovery as required by the discovery rules or a court order." Wachtel v. Health Net, Inc., 239 F.R.D. 81, 84 (D.N.J. 2006). Federal Rule of Civil Procedure 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a)[12] or (e)[13] . . . the court, on motion . . . (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." FED. R. CIV. P. 37(c)(1). These sanctions are available "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted

---

and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." See 2015 U.S. ORDER 0017. Since the parties briefed the motions and conducted oral argument under the prior rule, the Court finds that it is not just and practicable to apply the amended rules in connection with these motions.

[12] Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires a party to provide to other parties "a copy . . . of all documents . . . that the disclosing party has in its possession . . . [that it] may use to support its claims or defenses . . . ." FED. R. CIV. P. 26(a)(1)(A)(ii). "The purpose of voluntary disclosures is to streamline discovery . . . [to avoid] delays and costs." Tarlton v. Cumberland Cty. Corr. Facility, 192 F.R.D. 165, 168-69 (D.N.J. 2000).

[13] Federal Rule of Civil Procedure 26(e) requires "[a] party who has made a disclosure under Rule 26(a) -- or who has responded to a[] . . . request for production . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect. . . ." FED. R. CIV. P. 26(e).

to such conduct in the absence of such a deterrent." <u>Nat'l Hockey League v. Metro. Hockey Club</u>, 427 U.S. 639, 643 (1976). However, to be sanctioned under Federal Rule of Civil Procedure 37(c)(1), the Court must find that a party's failure to disclose information was substantially justified or is harmless. FED. R. CIV. P. 37(c)(1).[14]

Substantial justification has been defined as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." <u>Tolerico v. Home Depot</u>, 205 F.R.D. 169, 175–76 (M.D. Pa. 2002) (internal quotes omitted) (holding that the plaintiff lacked substantial justification as the plaintiff's reason for failing to produce documents sooner was because it was an inadvertent mistake).

The Court finds that Defendant Zimmer violated Rule 37(c) as it lacks a substantial justification for its belated production of the documents at issue. Defendant Zimmer's untimely production included the CDSR, the updated CDSR, and the design

---

[14] Defendant briefly asserts that it is "unclear" whether Federal Rule of Civil Procedure 37(c) applies in circumstances where there "was only a delay in producing a document, not a refusal to produce." (Def. Zimmer's Suppl. Memo. [Doc. No. 113], 8.) The Court rejects this argument. Federal Rule of Civil Procedure 37(c)(1) permits an award of sanctions for the failure to disclose information required under Rule 26(a). <u>See</u>, <u>e.g.</u>, <u>Tarlton v. Cumberland Cty. Corr. Facility</u>, 192 F.R.D. 165 (D.N.J. 2000) (granting sanctions for the defendant's failure to produce cover sheets despite defendant's later production of the documents).

drawing and Device History Record for the specific plate at issue. These documents are undeniably relevant to Plaintiff's claims, and Defendant Zimmer has admitted they were not only germane to the issues in this case, but should have been produced earlier. (Transcript [Doc. No. 107], 28:16-22.)

Defendant Zimmer casts responsibility upon Mr. Reilly for the failure to produce the CDSR until January 15, 2015 and characterizes Mr. Reilly's action as an inadvertent mistake. (Id. at 28:21-23.) However, inadvertence is not a substantial justification for failing to produce documents under Rule 37(c)(1). Additionally, Defendant Zimmer failed to provide a substantial justification why the updated CDSR was not produced until March 4, 2015. Accordingly, the Court finds that Defendant Zimmer lacked a substantial justification for the delayed production.

Moreover, Defendant Zimmer has not provided a substantial justification for producing the design drawing and the Device History Record for the plate at issue in this case until the last day of discovery. Defendant Zimmer admits that the CDSR contained the lot number and that it had the CDSR in its possession. (See Def. Zimmer's Suppl. Mem. [Doc. No. 113], 6.) However, Defendant Zimmer contends that it needed the lot number in order to produce the design drawing and Device History Record and the lot number was not located until January 11, 2015 when Mr.

15

Reilly apparently found it in the CDSR. (See Reilly Aff. at ¶ 27.) Even accepting Mr. Reilly's assertion, this explanation still does not explain why Defendant Zimmer could not locate the lot number for the plate sooner. In particular, Defendant Zimmer has failed to explain the search it undertook to locate the missing lot number. Defendant Zimmer's omission is magnified when considering the March 12, 2014 email sent by Ms. Fishman, a paralegal at Mr. Reilly's firm, to Mr. Tanner, an employee for Defendant Zimmer, where she listed the lot number — 61196342 — at issue in this matter. (See Reilly Aff., Ex. C at 2.) Moreover, copied on Ms. Fishman's email was Ms. Martinsky, Defendant Zimmer's litigation coordinator. (See id.) Ms. Fishman's email should have placed Defendant Zimmer on notice of the missing lot number. Therefore, Defendant Zimmer does not have a substantial justification for the delayed production of the design drawing and Device History Record for the plate at issue until the final day of discovery. Moreover, the failure to produce was not harmless in light of the relevance of the documents and the late production.

The Court also finds that Defendant Zimmer and Mr. Reilly were grossly negligent in failing to promptly produce the CDSR and failing to locate the missing lot number sooner. "Gross negligence goes beyond negligence, by degree and has been described as a failure to exercise even the care which a careless person would use." N.V.E., Inc. v. Palmeroni, No. 06-5455, 2011 WL 4407428, at

16

*4 (D.N.J. Sept. 21, 2011) (internal quotes omitted). Moreover, gross negligence has been found when a party's collection and review of documents for discovery is beyond what a careless person would do. Id. (finding that the plaintiff was grossly negligent because the person who collected and reviewed documents was not an attorney and the "[c]ourt [could not] fathom how [the plaintiff] can be confident that it has produced all relevant information . . . when there has not been a single attorney reviewing the documents").

Mr. Reilly represented to the Court in his pro hac vice motion that he has a long-standing relationship with Defendant Zimmer. (See Amended Reilly Aff. [Doc. No. 32] at ¶ 3.) In particular, Mr. Reilly represented that he was "intimately familiar" with the complex legal and medical issues involved in this case and has experience with product liability litigation. (Id.) In addition, Mr. Reilly's firm, Faegre Baker Daniels LLP is "national counsel" for Defendant Zimmer. (See Transcript [Doc. No. 107], 25:15-19.) The Court finds it inexcusable that Mr. Reilly "inadvertently" forgot to produce the CDSR, which is germane to this case and, as Defendant Zimmer characterizes it, "exculpatory evidence that Zimmer would be eager to produce." (See Def. Zimmer's Sanctions Opp'n [Doc. No. 93], 3.) Furthermore, the Court finds that Mr. Reilly's failure to locate the missing lot number in the

CDSR, especially in view of the March 12, 2014 email from Ms. Fishman, warrants sanctions.

Furthermore, Defendant Zimmer's conduct also warrants sanctions. Although Mr. Reilly is ready to accept the responsibility here, the Court does not find Mr. Reilly to be solely at fault. Defendant Zimmer has failed to explain the efforts it undertook to locate the missing lot number. It is undisputed that the missing lot number was contained in the CDSR, a document that Defendant Zimmer had in its possession since at least May 23, 2013. Moreover, Ms. Fishman's March 12, 2014 email to Mr. Tanner of Defendant Zimmer (copying Zimmer's litigation coordinator, Ms. Martinsky) provided Defendant Zimmer the missing lot number — 61196342. Defendant Zimmer has provided no explanation why this email did not put it on notice of the missing lot number. Defendant Zimmer, with an in-house litigation coordinator, has not explained why it could not locate the missing lot number in its own documents. Accordingly, the Court finds Defendant Zimmer's conduct also warrants sanctions.

As the Court has found Defendant Zimmer and Mr. Reilly's conduct to be in violation of Rule 37(c), the Court will next determine the appropriate sanctions that should be awarded. Plaintiff and Defendant O'Shea both seek sanctions under Rule 37(b)(2)(A)(i)-(vi) for Defendant Zimmer's belated production of documents in violation of Rule 26(a) and 26(e). Plaintiff has

18

requested the Court enter a default judgment against Defendant Zimmer under Rule 37(b)(2)(A)(vi) and also seeks attorney's fees and costs incurred as a result of the necessity of filing this Motion. (See Proposed Order [Doc. No. 89], 2 on the docket.) Defendant O'Shea seeks an order from the Court under Rule 37(b)(2)(A)(ii) precluding Defendant Zimmer "from introducing any evidence or expert testimony at trial which assert that Dr. O'Shea's surgical technique or that the angle of the screw placement by Dr. O'Shea caused or contributed to the failure of the Zimmer Trinica Select Anterior Cervical Plate locking mechanism." (See Proposed Order [Doc. No. 90-2].) In addition, Defendant O'Shea seeks attorney's fees and costs associated with any future depositions of witnesses identified in the CDSR or updated CDSR. (See id.) Defendant O'Shea also requests that Defendant Zimmer be required to bear the cost of Defendant O'Shea's expert witnesses.

The Court "has broad discretion" in determining the "type and degree of sanctions it can impose." Wachtel, 239 F.R.D. at 84. Any sanction must be "just and related to the claims at issue." Id. "Where a party has willfully withheld highly relevant and highly adverse material from discovery, despite specifically tailored and repeated requests for such material, sanctions are appropriate." Gallant v. Telebrands Corp., 35 F. Supp. 2d 378, 404 (D.N.J. 1998). The sanctions sought by Plaintiff and Defendant

O'Shea are both extreme sanctions. See Nat'l Hockey League, 427 U.S. at 643 (holding that the "extreme sanction of dismissal" was appropriate as the respondents' "flagrant bad faith and their counsel's callous disregard of their responsibilities" warranted dismissal); see also Access 4 All, Inc. v. ANI Assocs., Inc., No. 04-6297, 2007 WL 178239, at *3 (D.N.J. Jan. 27, 2007) (observing that exclusion of "evidence is an 'extreme' sanction not normally imposed absent 'willful deception' or 'flagrant disregard'" of a court order.") (citations omitted)). To determine whether dismissal of a case, or in this case entry of default judgment against Defendant, is appropriate, the Court considers the six factors set forth by the Third Circuit in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). These factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Id. (emphasis omitted).

However, "[dismissal] is the most severe sanction." Wachtel, 239 F.R.D. at 101. As such, the Third Circuit has found that "dismissals with prejudice or defaults are drastic sanctions,

termed 'extreme' by the Supreme Court, . . . and are to be reserved for [such] cases." <u>Poulis</u>, 747 F.2d at 867-68 (3d Cir. 1984) (citing <u>Nat. Hockey League</u>, 427 U.S. at 643). Indeed, a dismissal "must be a sanction of last, not first, resort." <u>Hoxworth v. Blinder, Robinson & Co.</u>, 980 F.2d 912, 922 (3d Cir. 1992) (internal quotations omitted). The burden is on the moving party to demonstrate that the <u>Poulis</u> factors favor imposition of such sanction. <u>Comdyne I, Inc. v. Corbin</u>, 908 F.2d 1142, 1148 (3d Cir. 1990).

In analyzing the <u>Poulis</u> factors of responsibility and dilatoriness, the Court finds that the fault rests with both Mr. Reilly and Defendant Zimmer in the late production. Moreover, Defendant's failure to promptly produce the documents, in light of the numerous opportunities to do so, demonstrated a pattern of dilatory behavior. No substantial justification has been submitted to explain the failure of Defendant Zimmer to identify the lot number. Moreover, the March 12, 2014 email certainly placed counsel on notice of the missing lot number, and Mr. Reilly's admission that he forgot to produce the CDSR demonstrates his personal responsibility for the failure to promptly produce the documents. The Court finds, therefore, that these two factors support a finding of sanctions.

The Court next considers the prejudice suffered by the moving party as a result of the Defendant's conduct. When reviewing

discovery violations, prejudice is determined based upon "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003). In addition, in determining whether prejudice exists, the Court examines whether the party's delay "has resulted in 'extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party.'" Chiarulli v. Taylor, No. 08-4400, 2010 WL 1371944, at *3 (D.N.J. Mar. 31, 2010) (quoting Huertas v. City of Phila., No. 02-7955, 2005 WL 226149, at *3 (E.D. Pa. Jan. 26, 2005), aff'd, 139 Fed App'x 444 (3d Cir.), cert. denied, 546 U.S. 1076 (2005)).

Plaintiff argues that Defendant Zimmer's withholding of relevant documents until the end of discovery "makes a sham of the discovery process and in effect renders all previous discovery meaningless." (Pl.'s Brief [Doc. No. 89], 6.) Plaintiff asserts that if he had the withheld documents earlier, he would have conducted discovery differently. (Id.) Moreover, Plaintiff argues that Defendant Zimmer's "last minute production" has shed light on fourteen individuals whose depositions would now be necessary to take. (Pl.'s Suppl. Mem. [Doc. No. 110], 5.) Defendant Zimmer counters that Plaintiff has merely made "conclusory statements" regarding the prejudice he has suffered and thus has not satisfied his burden. (Def. Zimmer's Suppl. Mem. [Doc. No. 113], 11.)

Additionally, Defendant Zimmer has suggested that the Court should reopen fact discovery which would eliminate any prejudice suffered by the parties. (Id. at 14.)

Defendant O'Shea also argues that the documents produced "contain what appear to be alleged party admissions by Dr. O'Shea that her own surgical technique caused the alleged product failure in question." (Walsh Certification [Doc. No. 90-1], ¶ 6.) Defendant O'Shea asserts that because of her alleged party admission, she should have been apprised of this evidence prior to her deposition. (Def. O'Shea's Reply Brief [Doc. No. 114], 2.) However, Defendant O'Shea did not have this information prior to being deposed and has now testified "concerning her conclusions about why the surgically placed screws backed out of position." (Def. O'Shea's Suppl. Mem. [Doc. No. 111], 1.) Defendant O'Shea asserts that she has been prejudiced since she should not have been deposed without knowledge of her alleged party admission. (See id.) Defendant Zimmer has not addressed Defendant O'Shea's argument, but merely asserts that reopening discovery would cure any prejudice suffered by Defendant O'Shea. (See Def. Zimmer's Sanctions Opp'n [Doc. No. 93], 4). The Court finds that both moving parties have suffered prejudice as a result of the delayed production in that depositions have been conducted to date without the benefit of those documents. However, the Court agrees with Defendant that Plaintiff has not sufficiently demonstrated why the discovery conducted to date is

meaningless or how the litigation strategy was adversely affected.
Any prejudice with respect to the depositions conducted to date
may be addressed by reopening discovery.  However, Defendant O'Shea
has also been prejudiced in that she has been deposed without
having the opportunity to review the CDSR and her alleged party
admission. Defendant Zimmer and Mr. Reilly's conduct has led to
Defendant O'Shea giving testimony without knowledge of relevant
and germane information. Accordingly, Defendant O'Shea has
suffered additional prejudice as a result of the late production.
As set forth below, this prejudice may not be cured by reopening
discovery.

The Court next addresses the Poulis factor as to whether
the conduct of Defendant or its attorney was willful or in bad
faith. Although the Court has found that the late production was
improper, the Court concludes at this time that the late production
was not a result of bad faith. Nor does it appear that Defendant
Zimmer engaged in active concealment of the documents.  Exclusion
of evidence is an "extreme sanction, not normally . . . imposed
absent a showing of willful deception or flagrant disregard of a
court order by the proponent of the evidence." Konstantopoulous v.
Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997) (citations and
internal quotation marks omitted). Indeed, Defendant Zimmer has
asserted that the documents contain exculpatory evidence and
appear to contain a party admission against Defendant O'Shea. (See

Def. Zimmer's Compel Opp'n [Doc. No. 94], 3.) This factor supports the conclusion that Defendant Zimmer's failure to timely produce does not appear to be in bad faith or willful. However, this finding is without prejudice to a renewed motion if depositions provide information to support a finding of bad faith.

Before turning to the effectiveness of other sanctions, the Court considers the <u>Poulis</u> factor related to the meritoriousness of the claims and defenses. As noted by this defense, clearly Zimmer disputes liability with a number of defenses. In addressing the meritoriousness of a pleading, courts generally consider whether "the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." <u>Poulis</u>, 747 F.2d at 869-70. A court need not, however, "balance both parties' claims and defenses" or "have a mini-trial before it can impose a default." <u>Hoxworth</u>, 980 F.2d at 922. The "meritoriousness factor" is "neutral and not dispositive" in the <u>Poulis</u> analysis when both sides' positions appeared reasonable. <u>See</u> <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.</u>, 843 F.2d 683, 696 (3d Cir. 1988). The Court finds this factor neutral in the evaluation of sanctions.

Under <u>Poulis</u>, the Court must also consider the effectiveness of other, less drastic sanctions. Here, the Court agrees with Defendant that reopening discovery is a less drastic sanction that may alleviate the prejudice suffered by the moving

parties.  In addition, in order to address the prejudice to the moving parties in having to engage in additional discovery, the Court shall order Defendant Zimmer to pay both Plaintiff and Defendant O'Shea's reasonable expenses, including attorneys' fees, incurred in connection with the additional discovery.  Although Plaintiff asserts many depositions are necessary, the Court shall address the specific depositions to be permitted and the scope of those depositions at the next court conference.

In conclusion, in evaluating the <u>Poulis</u> factors, the Court finds Plaintiff's request for default judgment not appropriate as on balance the <u>Poulis</u> factors do not support such a finding absent a showing of bad faith.  The Court notes that Defendant O'Shea requests suppression of her party admission as she has suffered additional prejudice. However, the Court finds that excluding the CDSR and Defendant O'Shea's alleged party admission is not an appropriate sanction at this time. This situation is unique as excluding the CDSR or any evidence of Defendant O'Shea's surgical technique may prejudice the Plaintiff as the document allegedly contains a party admission by Defendant O'Shea. Suppressing the CDSR or evidence of Defendant O'Shea's surgical technique would be unfair to the Plaintiff and the Court cannot penalize the Plaintiff for Defendant Zimmer and Mr. Reilly's actions. Yet, the Court is concerned that the prejudice suffered by Defendant O'Shea may not be cured by reopening discovery and

being re-deposed. Accordingly, the Court will deny Defendant
O'Shea's motion seeking to exclude the CDSR without prejudice and
allow her to refile after the additional depositions are conducted
at which time Defendant O'Shea may file a motion *in limine* to
suppress the evidence. The Court, however, finds no basis to award
a sanction that requires Defendant Zimmer to bear the costs of
Defendant O'Shea's experts as there has been no showing that the
delayed production is related to such relief.

      Under Federal Rule of Civil Procedure 37(c)(1), the
Court further finds that Defendant Zimmer and Mr. Reilly shall pay
the reasonable expenses, including attorneys' fees, caused by
their failure to produce documents in a timely fashion. "[T]he
imposition of sanctions" under Federal Rule of Civil Procedure 37
"is a matter within the discretion of the trial court." Newman v.
GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d
Cir. 1995). In particular, the rule "provides that sanctions should
not be imposed if the failure to disclose is harmless." Whether
the failure to disclose was harmless "depends upon whether the
other parties suffer prejudice." Cody v. Phil's Towing Co., 247 F.
Supp. 2d 688, 696 (W.D. Pa. 2002). Discovery violations that
require the parties to reopen or reexamine areas of discovery have
been held to be prejudicial and sufficient to require sanctions.
Id. (holding that defendant shall "pay for any additional discovery
costs and attorney's fees incurred as a result of having to reopen

or reexamine areas of discovery further placed at issue" because of defendant's failure to supplement interrogatory responses.) As the Court has already found that Plaintiff and Defendant O'Shea have been prejudiced by Defendant Zimmer and Mr. Reilly's conduct in connection with the late production, an award of reasonable attorneys' fees and costs are appropriate under Rule 37(c)(1).

Defendant Zimmer and Mr. Reilly's conduct during discovery has required Plaintiff and Defendant O'Shea to expend attorneys' fees and costs associated with filing these motions and attending oral argument on this matter. Accordingly, under Rule 37(c)(1), Defendant Zimmer and Mr. Reilly shall also pay Plaintiff and Defendant O'Shea's reasonable expenses, including reasonable attorneys' fees and costs associated with the motions for sanctions. In order to determine the proper apportionment of monetary sanctions between Defendant Zimmer and Mr. Reilly, the Court will schedule a hearing on this issue.

The Court next considers Defendant Zimmer's motion to withdraw Mr. Reilly's *pro hac vice* admission [Doc. No. 105]. Under Local Rule 104.1(h), an attorney admitted before the court *pro hac vice* "shall be deemed thereby to have conferred disciplinary jurisdiction upon this Court for any alleged misconduct of that attorney arising in the course of or in the preparation for such proceeding." In light of the Court's conclusion that the award of fees and expenses must be apportioned between Defendant Zimmer and

28

Mr. Reilly, the Court denies without prejudice Defendant Zimmer's motion to withdraw Mr. Reilly's *pro hac vice* admission.

Finally, as to Plaintiff's motion to compel [Doc. No. 88], in light of the Court's ruling to reopen discovery, the Court grants Plaintiff's motion for additional discovery. In addition to seeking additional discovery, Plaintiff also seeks a ruling that the attorney-client privilege asserted by Defendant Zimmer in connection with the deposition of non-party witness Devin Finnell is not appropriate. Mr. Finnell works for Allied Orthopedics and was present during one of the Plaintiff's surgical procedures performed by Defendant O'Shea. (See Transcript [Doc. No. 107], 20:17-22; see also Ex. D [Doc. No. 88-2], 3.) Mr. Finnell was deposed on January 9, 2015, and during the deposition, counsel for Defendant Zimmer, Mr. Reilly, asserted that he was representing Mr. Finnell and instructed Mr. Finnell not to respond to any questions regarding conversations between Mr. Reilly and Mr. Finnell. (See Ex. E [Doc. No. 88-3], 7:1-5; 7:12-8:2.) Plaintiff takes issue with this assertion of the attorney-client privilege. Plaintiff claims that the attorney-client privilege cannot exist between Mr. Finnell and counsel for Defendant Zimmer as Mr. Finnell is not employed by Zimmer and is not a party in the current action. Plaintiff asserts that Mr. Finnell worked for an independent entity and is not a party to this action. (Pl.'s Memorandum of Law in Support of Pl.'s Mot. [Doc. No. 88], 8.) Plaintiff further contends

that Mr. Finnell "is in no need of legal counsel in this matter." (Id.) Moreover, Plaintiff asserts that if Defendant Zimmer's counsel represents Mr. Finnell, there could be a conflict of interest as Mr. Finnell was present during the surgery and could have evidence harmful to Defendant Zimmer. (Id. at 9.)[15]

Plaintiff also asserts that Defendant Zimmer has not produced the defense and indemnification agreement between Zimmer and Mr. Finnell. (Pl.'s Mot. at ¶ 14.) Defendant Zimmer argues that Mr. Finnell has a right to counsel, that Mr. Finnell signed a "defend and indemnify" agreement with Faegre Baker Daniels LLP prior to his deposition, and that two months before his deposition, Defendant agreed to defend and indemnify Mr. Finnell. (Defendant Zimmer's Opposition [Doc. No. 94], 3-4.) Defendant Zimmer asserts that it has shown an attorney-client relationship and thus any communications between Mr. Finnell and Faegre Baker Daniels LLP are privileged. (Id. at 3.) Defendant does not seek to shield any factual questions or any questions directed to Mr. Finnell's recollection and knowledge of the facts of the case. (Id. at 4.)

This issue is governed by New Jersey law as the matter is before the Court by way of diversity. See FED. R. EVID. 501. Under New Jersey law, the party asserting the privilege bears the

---

[15] The Court shall not address the conflict issue. To the extent Plaintiff asserts there is a conflict that warrants disqualification, Plaintiff shall file an appropriate motion.

burden of proving that the privilege applies in that situation. Horon Holding Corp. v. McKenzie, 775 A.2d 111, 116 (N.J. Super. Ct. App. Div. 2001). "For a communication to be privileged it must initially be expressed by an individual in his capacity as a client in conjunction with seeking or receiving legal advice from the attorney in his capacity as such, with the expectation that its content remain confidential." Fellerman v. Bradley, 493 A.2d 1239, 1242 (N.J. 1985) (citation omitted).

In this case, Mr. Finnell testified at his deposition that he had a conversation about the litigation with his counsel. (Ex. E [Doc. 88-3], 7:1-3.) Mr. Reilly then stated that his firm was representing Mr. Finnell for the deposition and further instructed Mr. Finnell not to answer any questions concerning the conversation between Mr. Finnell and Mr. Reilly. (Id. at 7:4-7; 7:21-8:2.) The Court finds that this communication between Mr. Reilly and Mr. Finnell may be protected by the attorney-client privilege; however, the Court denies the motion without prejudice on this issue in light of the fact that Plaintiff has not been provided with a copy of the defense and indemnification agreement upon which the alleged client relationship is based. Defendant shall produce the defense and indemnification agreement to Plaintiff. Upon review of that agreement, Plaintiff may refile the motion if Plaintiff still asserts that the attorney-client privilege does not apply or otherwise should be pierced.

Consequently, for the reasons set forth herein, and for good cause shown,

IT IS on this 30th day of December 2015,

ORDERED that Plaintiff's motion to compel [Doc. No. 88] shall be, and is hereby, **<u>GRANTED IN PART</u>** and **<u>DENIED IN PART</u>**; and it is further

ORDERED that factual discovery in this case shall be reopened; and it is further

ORDERED that Defendant Zimmer shall produce within ten (10) days from the date of entry of this order a copy of the defense and indemnification agreement between Mr. Finnell and Faegre Baker Daniels LLP; and it is further

ORDERED that Plaintiff and Defendant O'Shea's motions seeking discovery sanctions [Doc. Nos. 89 and 90] shall be, and are hereby, **<u>GRANTED IN PART</u>** to the extent Plaintiff and Defendant O'Shea seek reasonable attorneys' fees and costs; and it is further

ORDERED that Plaintiff's motion [Doc. No. 89] to the extent it seeks a default judgment pursuant to Rule 37(c)(1)(C) shall be, and is hereby, **<u>DENIED</u>** without prejudice; and it is further

ORDERED that Defendant O'Shea's motion [Doc. No. 90] to the extent it seeks to preclude evidence at trial shall be, and is hereby, **<u>DENIED</u>** without prejudice; and it is further

        **ORDERED** that Defendant Zimmer's motion to withdraw Mr. Reilly's *pro hac vice* admission [Doc. No. 105] shall be, and is hereby, **DENIED** without prejudice.

        **ORDERED** that Defendant Zimmer and Mr. Reilly shall pay Plaintiff and Defendant O'Shea's reasonable expenses, including reasonable attorneys' fees and costs in connection with the filing of the sanction motions [Doc. Nos. 89 and 90]; and it is further

        **ORDERED** that Defendant Zimmer and Mr. Reilly shall pay Plaintiff and Defendant O'Shea's reasonable expenses, including reasonable attorneys' fees and costs in connection with the additional discovery to be conducted - the scope of which will be addressed at the Court's next conference; and it is further

        **ORDERED** that the parties shall appear for an in-person conference on **January 14, 2016 at 1:00 P.M.** in Courtroom 3B at which time the Court will address the schedule and scope of discovery and a schedule for submission of the applications for attorneys' fees and costs.

                         s/ Ann Marie Donio
                         ANN MARIE DONIO
                         UNITED STATES MAGISTRATE JUDGE

cc: Hon. Noel L. Hillman